IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO TAYLOR | : | |
| | : | Civil Action No. 4: 06-CV-1086 |
| Petitioner, | : | |
| | : | (Judge McClure) |
| v. | : | |
| | : | |
| JONATHAN MINER | : | |
| | : | |
| Respondent. | : | |

**O R D E R**

July 10, 2008

**BACKGROUND:**

On May 30, 2006, Antonio Taylor filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Taylor is currently a federal prisoner incarcerated at the United States Penitentiary at Allenwood ("USP-Allenwood"), White Deer, Pennsylvania.  Taylor had previously been convicted in the United States District Court for the Eastern District of Pennsylvania of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Petitioner has now brought this petition challenging his sentence computation and argues that he has not received credit for all time served.

We have appointed counsel for petitioner and an evidentiary hearing was held on March 28, 2008.  The case is now ripe for disposition.  For the following

reasons, the court will grant the petition in part and order the respondent to credit

petitioner with twenty-one months and six days of time served.

**DISCUSSION:**

## I.  Relevant Facts

On February 8, 1999, the Pennsylvania Board of Probation and Parole

("Parole Board") released Taylor on parole from an aggregated 19-year prison

sentence.  (Rec. Doc. No. 40, ¶ 1, Ex A.)  At this time, the Pennsylvania

Department of Corrections calculated that Taylor's prison term would expire on

April 16, 2010.  (Id. ¶ 2, Ex. A.)  On June 1, 1999, after Taylor absconded from

parole supervision, the Parole Board declared him delinquent with an effective date

of May 29, 1999.  (Id. ¶¶ 3-4, Ex. C.)  On August 28, 1999, Taylor was arrested by

the Philadelphia Police Department.  (Id. ¶ 5.)  On September 1, 1999, Parole

Agent Joseph P. Ryan prepared a "Notice of Charges and Hearing" setting forth

Taylor's new criminal charges and his technical parole violations. (Id. ¶ 6, Ex. D.)

The same day, Ryan prepared a "Technical Violation Arrest Report" with a

recommendation to detain and recommit as a technical violator.  (Id. ¶ 9, Ex. E.)

Also on the same day, Ryan prepared a "Criminal Arrest and Disposition Report"

setting forth the details of the new criminal charges and recommending detention

2

pending disposition of the new criminal charges.  (Id. ¶ 10, Ex. F.)

On September 8, 1999, the Parole Board held a violation hearing and issued

a decision to "recommit to a state correctional institution as a technical parole

violator when available to serve 12 months backtime."  (Id. ¶ 14, Ex. H.)  On

March 1, 2000, the state charges in Philadelphia County stemming from his August

28, 1999 arrest were dismissed.  (Id. ¶ 16, Ex. I.)  On March 30, 2000, the state

charges were refiled in Philadelphia County.  (Id. ¶ 19, Ex. I.)

On April 10, 2000, Parole Agent Ryan executed the same "Criminal Arrest

and Disposition Report" that was originally prepared on September 1 and made a

final recommendation to "revoke/recommit . . . TPV only."  (Id. ¶ 20, Ex. J.)  The

report further stated that Taylor's "case was dismissed on 3/1/00.  He has no open

charges in Philadelphia.  All hearings regarding Technical Violations have been

held.  Board Action dated 11/3/99 has been received.  Parolee available.  Please

issue Final Board Action."  (Id.)  Evidently, Ryan was unaware that the charges

had been refiled in Philadelphia County.  On April 20, 2000, Parole Agent Ryan

executed yet another "Criminal Arrest and Disposition Report" in which he noted

that Taylor was rearrested on March 30, 2000 and made a final recommendation to

"revoke/recommit."  (Id. ¶ 22, Ex. L.)

On June 20, 2000, an indictment was filed in the Eastern District of

Pennsylvania charging Taylor with two counts of being a felon in possession of a firearm in violation 18 U.S.C. § 922(g).  (Id. ¶ 23, Ex. M at Rec. Doc. No. 1.)  On July 5, 2000, Taylor was released from state custody into federal custody.  (Id. ¶ 25, Ex. M at Rec. Doc. No. 3.)  On July 18, 2000, the state charges were dismissed yet again.  (Id. ¶ 24, Ex. I.)  On October 15, 2001, Taylor was convicted after he pled guilty to the federal charges.  (Id., Ex. M at Rec. Doc. No. 47.)  On April 2, 2002, Taylor was sentenced in the Eastern District of Pennsylvania to a term of imprisonment of 200 months to run consecutively to the state sentence that the defendant is currently serving.  (Id. ¶ 26, Ex. M at Rec. Doc. Nos. 53-54.)  On April 12, 2002, Taylor was returned to state custody.  (Id. ¶ 27, Ex. O.)  Thus, the total time he was in federal custody was 21 months, 7 days.  (Id. ¶ 28.)

On August 19, 2002, the Parole Board received a letter from Taylor that recounted the history of his case and stated that he had yet to receive a parole hearing and requested that he be paroled to federal authorities.  (Id. ¶ 29, Ex. P)

On September 10, 2002, Kathy Strayer, a Parole Staff Technician, called Parole Agent Ryan at the request of the Parole Board's chief counsel to prepare a report on petitioner's rearrest and Taylor's federal conviction.  (Id. ¶ 30, Ex. Q.)  Ryan advised Strayer that he was not aware of the federal conviction but would prepare the requested reports. (Id. ¶ 31, Ex. R.)  On December 30, 2002, Strayer

sent an email to James Hines advising him that Ryan had still not provided the requested reports.  (Id. ¶ 32, Ex. Q.)

On December 6, 2002, Taylor received a misconduct for possession of marijuana for which he served 90 days in disciplinary custody.  (Id. ¶ 33, Ex. S.) On February 28, 2003, Hines faxed a "Criminal Arrest and Disposition Report" prepared by Ryan to Strayer that was dated February 26, 2003.  (Id. ¶ 35, Ex. T, U.)  This report notes the federal conviction and sentence and makes a final recommendation to "revoke/recommit."  (Id. ¶ 38.)  The same day, Hines also faxed Strayer a "Special Field Report" dated February 25, 2003 which reaffirmed that Ryan had been unaware that Taylor was arrested by the federal government and convicted in federal court.  (Id. ¶ 39, Ex. R.)  The report also states that a preliminary hearing had been scheduled for August 14, 2000 but was rescheduled for August 25, 2000 because Taylor was "unavailable."  (Id.)  The report further states that on August 25, 2000, Taylor was "still out on federal writ and the reason was unknown."  (Id.)  It also states that a phone call was placed to "parole manager McFadden at Central Office" inquiring about Taylor's status and that "McFadden stated he would attempt to secure information."  (Id.)  Finally, the report states that Parole Agent Ryan received information that Taylor had been convicted in federal court, presumably referring to the information received from Kathy Strayer.  (Id.)

On March 5, 2003, Kathy Strayer sent an email to Garth Walls which gave a brief history of Taylor's situation and stated that "[t]he problem this has created is that the Board only ordered 12 months for the technical violations.  Because the Federal conviction must be noted, he essentially has been 'available' since 8-31-99.  That means he's already put in 3 years, 6 months, 4 days on our backtime.  The Federal prison may give him credit from the initial offense date, but we have no way of knowing that at this time."  (<u>Id.</u> ¶ 40, Ex. V.)  The email further states "[p]lease make necessary arrangements to have this case listed on your March docket, per Chief Counsel."  (<u>Id.</u>)

On March 5, 2003, the Parole Board issued a document which ordered Taylor "recommitted for further imprisonment for the remainder of the unexpired maximum term, or until otherwise released or discharged according to law."  (<u>Id.</u> ¶ 42, Ex. W.)  The document further noted Taylor's federal conviction and stated "take no action" as to that conviction.  (<u>Id.</u>)  The same day, the Parole Board issued a "Notice of Board Decision" which also stated that it would "take no action" as to Taylor's federal conviction and that it would "refer to board action of 11-03-99 to recommit to a state correction institution as a technical parole violator."  (<u>Id.</u> ¶ 44, Ex. X.)

On April 8, 2003, the Parole Board issued a decision denying Taylor parole

based on his misconduct for possession of marijuana and the Department of

Correction's recommendation against parole.  (<u>Id.</u> ¶ 48, Ex. Z, AA.)  On February

12, 2004, the Parole Board granted Taylor parole.  (<u>Id.</u> ¶ 50, Ex. BB.)  On April 22,

2004, Taylor was released to his federal detainer.  (<u>Id.</u> ¶ 51, Ex. CC.)

## II.  Analysis

18 U.S.C. § 3585(b), which controls the award of prior custody credit, states:

> A defendant shall be given credit towards the service of a term of
> imprisonment for any time he has spent in official detention prior to
> the date the sentence commences –
>
> 1)     as a result of the offense for which the sentence was
>        imposed; or
>
> 2)     as a result of any other charge for which the defendant
>        was arrested after the commission of the offense for
>        which the sentence was imposed;
>
> <u>that has not been credited against another sentence</u>.

(emphasis added).  In <u>United States v. Wilson</u>, the Supreme Court cited § 3585(b)

and stated that "Congress made clear that a defendant could not receive double

credit for his detention time.  503 U.S. 329, 337 (1992).  Furthermore, in <u>Vega v.

United States</u>, the Third Circuit applied § 3585(b) to hold that a habeas petitioner

could not receive federal credit for a time period that had been credited to the

petitioner's parole violation sentence.  493 F.3d 310, 314 (3d Cir. 2007).  Thus, it

is clear that Taylor is not entitled to receive any credit on his federal sentence for

time periods for which he received credit towards his state sentence.

In his petition, Taylor argues that the Federal Bureau of Prisons has not granted him credit for all the time he has served on his federal sentence. Specifically, he argues that he is entitled to credit for the following periods:  1) August 28, 1999 to July 4, 2000; 2) July 5, 2000 to April 11, 2002; and 3) April 12, 2002 to April 22, 2004.  (Rec. Doc. No. 1, ¶ 8.)  The first time period represents the time period from his arrest by the Philadelphia police on state charges on August 28, 1999 until the time he was transferred to federal custody on July 5, 2000.  The second time period represents the time period he was in federal custody, which is from July 5, 2000 until April 11, 2002.  The final time period represents the time period from when he was returned to state custody on April 12, 2002 until his release on parole to the federal detainer on April 22, 2004.  We will now consider whether Taylor is entitled to credit for any of these time periods.

A.  August 28, 1999 to July 4, 2000

As a preliminary matter, we note that Taylor has been granted federal credit for the time period of August 28, 1999 through August 30, 1999, which represents the time period between his arrest and when Parole Agent Ryan prepared a technical violation arrest report.  (Gemberling Declaration, Rec. Doc. No. 7-2, Ex. 1, ¶ 25.)  Yet, once the technical violation arrest report was created, the Bureau of

8

Prisons appropriately stopped providing credit. The importance of this report is that once it was created, Taylor was no longer being held simply pursuant to the new state charges that ultimately morphed into his federal indictment. Rather, he was being held for his parole violation. Therefore, we find that Taylor is not entitled to credit from August 31, 1999 through July 4, 2000.

B. July 5, 2000 to April 11, 2002

This time period represents the period that Taylor was in federal custody in connection with his federal conviction for being a felon in possession of a firearm. The critical question regarding this time period is whether he received credit towards his state parole violation sentence during this period. If he did, he is not entitled to receive credit under § 3585(b) because doing so would violate the statute's restriction on double credit.

Despite the government's argument to the contrary, we do not believe that he received credit towards his state parole violation sentence at any time between July 5, 2000 and April 11, 2002. The Parole Board revoked Taylor's parole on November 3, 1999 and ordered him to serve a 12 month parole violator sentence. Yet, the government contends that Taylor received credit towards his state sentence from August 31, 1999 to April 22, 2004, a period of more than three years and seven months. Although the government may be correct in that the length of the

9

parole violator sentence simply establishes the period of time after which the individual can reapply for parole, we find unconvincing the government's argument that Taylor is at fault due to his failure to reapply for parole.  <u>See</u> <u>Rivenbark v. Pennsylvania Bd. of Probation and Parole</u>, 501 A.2d 1110, 1113 n. 4 (Pa. 1985) (stating that period of recommitment establishes period of time after which the parolee may apply for release).  He was in federal custody during this time and understandably assumed that he would be granted credit towards his federal case for this time period.  Presumably, it was not until he was granted parole in his state case and transferred back to federal custody that a sentencing computation was made and Taylor became aware that the Bureau of Prisons was not granting him credit for this time period.  In fact, we find it noteworthy that Kathy Strayer stated in her March 5, 2003 email that "[t]he Federal prison may give him credit from the initial offense date, but we have no way of knowing that at this time."  (Rec. Doc. No. 40, ¶ 40, Ex. V.)  In other words, an employee of the Pennsylvania Parole Board did not even realize that Taylor would not receive federal credit for this time period, so we are unwilling to fault Taylor for not doing so.

More importantly, it appears clear that the Parole Board completely lost track of Taylor while he was in federal custody.  Inexplicably, they were evidently

10

unaware that he was out on a federal detainer and was convicted and sentenced in his federal case.  Similarly, it does not even appear that they were aware that Taylor had been returned to state custody until four months after he was returned and they received a letter from Taylor, and Kathy Strayer, presumably in response to Taylor's letter, sent an email to Parole Agent Ryan inquiring about Taylor.  This gross negligence on the part of the Parole Board in failing to monitor an individual who was allegedly serving a parole violation sentence weighs highly in favor of a conclusion that Taylor was not serving his parole violation sentence during this time period.

Furthermore, if we were to reach an opposite conclusion and hold that Taylor was serving his parole violation sentence during this time period, his period of incarceration would be entirely dependent on the length of time the federal government took to prosecute and sentence Taylor.  In the present case, Taylor's federal prosecution took twenty-one months.  After these twenty-one months, he was returned to state custody and eventually paroled.  Considering that the Parole Board lost track of Taylor during the federal proceedings, if these proceedings had taken five years longer, this would have equated to five extra years of incarceration because the government's theory would remain that he was serving his parole violation sentence during this extra time.  In fact, the only thing that would have

11

stopped such an unjust result would have been the expiration of petitioner's maximum sentence.  In other words, the length of his imprisonment on his state conviction would be based on the time it took to prosecute a different criminal case, in a different jurisdiction no less.  This would be an unjust result, constituting a fundamental miscarriage of justice.

Therefore, for all of these reasons, we conclude that Taylor was not serving his state parole violation sentence during the period he was in federal custody. Therefore, we will grant him credit for the time period of July 5, 2000 through April 11, 2002.

C.  April 12, 2002 to April 22, 2004

This time period represents the time period from when he was returned to state custody until his release on parole to the federal detainer.  We do not believe that Taylor is entitled to credit for this time period.  This time period unquestionably represents a period that Taylor was in state custody serving his state parole violation sentence.  The fact that the Parole Board regrettably took its time considering Taylor's request for parole upon his return to state custody is a state issue.  Therefore, we find that Taylor has no right to receive credit towards his federal sentence for this time period.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     Petitioner's writ of habeas corpus pursuant to 28 U.S.C. § 2241 is

       granted in part.

2.     The Federal Bureau of Prisons is ordered to credit petitioner with

       twenty-one months and six days of credit on his federal sentence for

       the period July 5, 2000 to and including April 11, 2002.

3.     The clerk is directed to close the case file.


                                            s/ James F. McClure, Jr.    
                                          James F. McClure, Jr.
                                          United States District Judge